1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                           **EASTERN DISTRICT OF CALIFORNIA**

10

11   JOHN GOOLD,                          )   Case No.: 1:13-cv-00438 JLT
                                          )
12              Plaintiffs,               )
                                          )   ORDER GRANTING IN PART PLAINTIFF'S
13       v.                               )   MOTION TO COMPEL DISCOVERY
                                          )
14   HILTON WORLDWIDE, INC.,  et al.,     )   (Doc. 30)
                                          )
15              Defendants.               )
                                          )
16   _____ )

17          In this litigation, Plaintiff claims he was fired after complaining about sexual harassment

18   suffered by a former employee. In the instant motion, Plaintiff seeks to compel Defendants to produce

19   information related to complaints made to or about four individuals (Doc. 30 at 7-8) and to detail any

20   adverse employment actions suffered by the complainants, seemingly, as a result of making the

21   complaint.  Defendants oppose the motion and argue the interrogatories are is overbroad in terms of

22   time and subject matter and that the requested information is relevant. (Doc. 31, 8-14)  For the

23   following reasons, Plaintiff's motion to compel responses to Interrogatories No. 9 and 10 is

24   **GRANTED IN PART**.

25   **I.      Factual and Procedural History**

26          Plaintiff was employed as the "VP Finance" at Defendants' Doubletree Hotel in Bakersfield,

27   California.  (Doc. 1 at 2)  In October 2010, Plaintiff alleges that an employee, Medrano, reported to him

28   that the Human Resources Director had been sexually harassing her.  Id.  Plaintiff reported this

                                              1

information to his supervisor and reported it to Murray, who was the hotel's manager. Id. Plaintiff began taking his breaks with Medrano to ensure that no sexual harassment occurred during these intervals.  Id.

In January 2011, Plaintiff reported the sexual harassment of Medrano to Thornell.  (Doc. 1 at 2) In February 2011, Medrano was suspended, apparently related to her taking breaks.  Id. at 2-3. Plaintiff reported to Sommer—the Vice President for Human Resources—his concerns that Medrano's suspension may be in retaliation for her complaint of sexual harassment.  Id. at 3.  Sommer became angry with Plaintiff for failing to tell him about the sexual harassment earlier, though Plaintiff explained that he had reported it to Murray.  Id.  Medrano's suspension lasted two days and she was given "a final warning notice about break times."  Id.

On April 19, 2012, Plaintiff met with Murray and Pimentel who informed him that Medrano was being terminated for violating the 10-minute break policy.  (Doc. 1 at 3)  Plaintiff disputed this was true because he took his own breaks with Medrano and knew she had not violated company policy.  Id.

The next day, Plaintiff sent Murray an e-mail asking whether his own job was in jeopardy. (Doc. 1 at 3)  Murray denied that it was.  Id.  On April 25, 2012, Plaintiff discussed Medrano's firing with Pimintel.  Id.  Plaintiff reported that Medrano was an important part of the accounting team and he wanted her rehired.  Id.  Pimintel told Plaintiff that he was under "direct orders from Corporate Offices to investigate Medrano and that he was not to tell anyone of his secret investigation."  Id. Pimintel reported that he had video surveillance of Medrano's breaks and they exceed 10 minutes.  Id. Plaintiff explained that some of these "breaks" were actually working meetings where, while smoking outside, managers and supervisors would discuss company business and he was unaware that company policy prohibited this conduct.  Id. at 3-4. Pimintel admitted that the video surveillance only showed Medrano exiting the building and re-entering it and did not show what occurred during her time outside the building.  Id. at 4.  Plaintiff iterated his concern that Medrano had grounds for a lawsuit over her claims of sexual harassment and that if she filed litigation, he would back up her claim.  Id. On April 26, 2012, Plaintiff reiterated these concerns to Murray.  Id.  He told Murray that he wanted to fight for Medrano's return because he believed her firing was wrongful.  Id.

Plaintiff was out sick on April 30 and May 1, 2012 but upon his return on May 2, 2012, he was

1  required to attend a meeting with Murray, Thornell and Pimintel. (Doc. 1 at 4.)  At this meeting,

2  Plaintiff was terminated.  Id.  Plaintiff learned later that the grounds for his firing was approving time

3  records for employees who claimed to take only 10-minute breaks but who exceeded this time.  Id. at

4  5.

5         Throughout the nearly 14 years Plaintiff was employed by Defendants, he had never received a

6  "bad job performance appraisal," received merit pay raises every year and was named "manager of the

7  year" more than once.  (Doc. 1 at 4-5)  Thus, Plaintiff alleges his firing was in retaliation for his

8  complaints about the sexual harassment of Medrano and claims that statements made related to his

9  firing defamed him.  Id. at 5-7.

10         In their answer, Defendants admit that Plaintiff reported complaints of sexual harassment of

11  Medrano to Murray and Thornell.  (Doc. 9 at 2)  Defendants admit also that Medrano was suspended

12  and, ultimately, fired for violating the company's rest break policy.  Id. at 3-4.  Defendants agree that

13  Pimentel admitted to Plaintiff that the video surveillance of Medrano exiting and re-entering the

14  building for breaks did not observe the area where Plaintiff reported that the outside meetings occurred.

15  Id. at 3-4.  Finally, Defendants admit that Plaintiff met with Murray, Thornell and Pimentel on May 2,

16  2012 and that he was fired on that date.  Id. at 4.

17         In their Fourteenth Affirmative Defense, Defendants assert that even if retaliation was a

18  motivating reason for Plaintiff's firing, they would have taken the same action because they had

19  "legitimate, non-retaliatory business reasons" for doing so.  (Doc. 9 at 9-10.)  In addition, in their

20  Eleventh and Fifteenth Affirmative Defenses, Defendants claim they acted reasonably to correct and

21  prevent retaliatory conduct and in the Twentieth Affirmative Defense, Defendants allege they did not

22  act wilfully.

23         Currently before the Court is Plaintiff's motion to compel substantive responses to

24  interrogatories which seek information about others who have made employment complaints and who

25  suffered retaliation in response.  (Doc. 30)

26  **II.**    **Scope of Discovery**

27         The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure

28  and Evidence.  Rule 26(b) provides:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things. . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Further, relevancy is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340, 351 (1978).

### A.    Interrogatories

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b). Fed. R. Civ. P. 33(a). A responding party is obligated to respond to the fullest extent possible, and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(3)-(4). In general, a responding party is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, 2010 U.S. Dist. LEXIS 93447, at *9 (E.D. Cal. Aug. 24, 2010) (citing *L.H. v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 73753 (E.D. Cal. Sep. 21, 2007)).

Any grounds of an objection to an interrogatory must be stated "with specificity." Fed. R. Civ. P. 33(b)(4); *see also Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D. N.Y. 2000) (objection that interrogatories were "burdensome" overruled for failure to "particularize" the basis for objection); *Mitchell v. AMTRAK*, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002) (objections must explain how an interrogatory is overbroad or unduly burdensome).

## IV.    Discussion and Analysis

In this action, the disputed interrogatories concern requests for information related to whether others who have complained about illegal employment action suffered adverse employment actions. Specifically, in Interrogatory No. 9, Plaintiff requested Defendants:

> Identify all individuals who have made a complaint about illegal discrimination, including sexual harassment during the relevant period.

4

(Doc. 30-2 at 6.) Defendants responded,

> Defendants object to this interrogatory on the grounds that it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this interrogatory on the grounds that it is overly broad in scope and time, vague and ambiguous, burdensome, and harassing. Defendants also object to this interrogatory invades [sic] the privacy interests of Defendants' employees and innocent third-parties, which are protected by the right of privacy pursuant to Article I, 4 Section I of the California Constitution, the Fourth Amendment of the United States Constitution, as well as other California state laws and regulations. Defendants further object to this interrogatory on the grounds that it calls for speculation.

(Doc. 30-3 at 7-8) In request Interrogatory No. 10, Plaintiff requested:

> If the response to number 9 is in the affirmative, identify any adverse employment consequences such as termination, demotion, reduction in pay, discipline of any nature, or job transfers for all employees identified in the prior interrogatory, including dates of such action.

(Doc. 30-2 at 6-7.)  Defendants responded exactly as they had done as to Interrogatory No. 9.  (Doc. 30-2 at 8)  Relying upon these objections, Defendant did not provide any substantive responses.  (*Id.*)

Plaintiff has narrowed his Interrogatories to include complaints made to or about John Sommer, Bill Murray, Wes Thornell and Javier Pimental from January 1, 2006 through the date of the response.  (Doc. 30 at 8)  In opposition to the motion, Defendants argue that the discovery should be denied because (1) the information sought is not relevant, (2) it seeks information for too long of a period of time, and (3) the information invades the privacy rights of third parties.[1]

## A.     Evidence of Defendants' motive is relevant to this litigation

In this case, if Plaintiff can establish that he suffered retaliation after having engaged in protected conduct, the burden shifts to Defendants to demonstrate a legitimate, nonretaliatory reason for the action.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 61-65 (2006). If this occurs, the burden shifts back to Plaintiff to demonstrate that the reasons set forth by Defendants are pretext. St.

---

[1] Defendants object also that Plaintiff failed to file a joint statement as required by Local Rule 251(c). Plaintiff explains that his failure to do so was based upon the belief that when the Court authorized the filing of the motion to compel, the Court intended that it proceed via normal motion procedures, rather than via a joint statement. The Courts acknowledges that its statements in this regard were ambiguous. Notably, the purpose of the joint statement is to ease the Court's review of the issues but the failure to provide one does not lessen any obligation of either party nor is there prejudice imposed of Defendant based upon the failure to proceed with a joint statement. L.R. 251(c). Thus, the Court rejects Defendants' request to deny the motion on this basis.

1   <u>Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).  Whether "me too" evidence can be admitted at

2   trial is a case-by-case determination that "depends on many factors, including how closely related the

3   evidence is to the plaintiff's circumstances and theory of the case." <u>Sprint/United Mgmt. Co. v.</u>

4   <u>Mendelsohn</u>, 552 U.S. 379, 388 (2008). Thus, <u>Sprint</u> demonstrates that there is no per se prohibition on

5   the introduction of this type of evidence. In any event, the Court need not determine now whether the

6   evidence could be admitted at trial; instead, it need only determine whether Plaintiff is entitled to

7   discover it.

8        In general, evidence of other acts or wrongs may be admitted to demonstrate motive.  F. R. E.

9   404(b).  Indeed, courts admit this type of evidence frequently, upon the proper showing.  For example,

10  in <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1286 (11th Cir. 2008)—which was a case

11  involving claims of racial discrimination and retaliation—the court held, "The 'me too' evidence was

12  admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate."[2]

13  Likewise, the court held the information was admissible to determine "whether the antidiscrimination

14  and antiretaliation policies of Bagby Elevator were effective." <u>Id.</u>, at 1287.  Likewise, in <u>Griffin v.</u>

15  <u>Finkbeiner</u>, 689 F.3d 584, 598-99 (6th Cir. 2012), the court found error when the district court limited

16  the introduction of "me too" evidence only to the same decision-maker.  The court observed,

17      Whether the same actors are involved in each decision is a factor, but <u>Sprint</u> makes
        clear that it cannot be the only factor in the decision whether to admit "other acts"
18      evidence. Notably, the testimony in <u>Sprint</u> involved supervisors "who played no role in
        the adverse employment decision challenged by the plaintiff." 552 U.S. at 380, 128
19      S.Ct. 1140. Here, the district court did not consider other ways in which the excluded
        evidence could be "related ... to the plaintiff's circumstances and theory of the case," id.
20      at 388, 128 S.Ct. 1140, such as temporal and geographical proximity, whether the
        various decisionmakers knew of the other decisions, whether the employees were
21      similarly situated in relevant respects, or the nature of each employee's allegations of
        retaliation.
22

23  <u>Id</u>. at 598-599.  The Ninth Circuit agrees.  In <u>Heyne v. Carruso</u>, 69 F.3d 1475, 1481 (9th 1995), the

24  Court reversed the trial court's decision to preclude this type of evidence. The Court determined that

25

26  ----

27  [2] Defendants' argue that "me too" evidence may be found only in cases in which the plaintiff seeks to introduce evidence
    that others suffered sexual harassment by the same harasser or where others of the same protected class were subject to
    discrimination.  The Court notes Defendants fail to cite to authority for this.  More to the point, Federal Rules of Evidence
28  404(b) applies to *all* types of litigation not only to those cases which raise sexual harassment claims and not only to those
    that arise under Title VII.

1   evidence from other employees who suffered sexual harassment by the defendant was probative of the

2   defendant's motive for firing her.  Id.

3           Initially, Defendants argue that the Court should ignore the rationale of Heyne because Plaintiff

4   does not claim to have suffered sexual harassment. Though Heyne concerned a plaintiff who claimed

5   sexual harassment, the rationale set forth by the Court is not limited only to these types of cases.  For

6   the same reason, the Court also rejects the attacks Defendants' lodge on the rationale set forth in

7   Pantoja v. Anton, 198 Cal.App.4th 87, 123-124 (2011) and in Johnson v. United Cerebral Palsy/Spastic

8   Children's Found. of Los Angeles & Ventura Counties, 173 Cal.App.4th 740, 767 (2009).

9           The Court rejects Defendants' argument also that Heyne doesn't apply because Plaintiff does

10   not limit his discovery requests only to the person claimed to have been the "same harasser"

11   (apparently, arguing that only the other acts of the harasser of Medrano are at issue).  However, clearly,

12   whether Medrano actually suffered sexual harassment—or, indeed, whether any of Defendants'

13   employees suffered discrimination of any type—is irrelevant to the case.  Instead, the issue is whether

14   they have made discrimination complaints and, as a result, Defendants retaliated against them.

15   Moreover, despite Defendants' arguments, there is no such limitation in the analysis of Heyne and this

16   argument is contrary to Sprint (as noted in Griffin) which determined that the admissibility of this type

17   of evidence does not depend merely on whether the defendant is the same bad actor as in the "other

18   acts" evidence.  In any event, Plaintiff has limited his interrogatory number 9 to the four people who he

19   claims made the decision to fire him.  Thus, the Court concludes that the evidence is discoverable.  Fed.

20   R. Civ. P. 26(b)(1); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805 (1973) (A Title VII plaintiff

21   must be given "a full and fair opportunity to demonstrate by competent evidence that the presumptively

22   valid reasons . . . were in fact a coverup . . .")  Thus, the Court **OVERRULES** this objection.

23           **B.      Defendant's right to privacy does not preclude disclosure of financial information.**

24           Defendant argues that California law protects the right of privacy of third parties, which, they

25   claim, is implicated by the interrogatories at issue.

26           In Life Technologies Corp. v. Superior Court, 197 Cal.App.4th 640, 652 (2011), the court

27   determined that to evaluate whether discovery requests improperly invade a third party's right of

28   privacy, the Court must determine whether the information sought constitutes a "legally protected

7

1   privacy interest."  Toward this end, the court determined that personnel records of third parties *do*

2   implicate privacy interests and noted, "The public interest in preserving confidential, personnel

3   information generally outweighs a private litigant's interest in obtaining that information."  Id.

4   However, the court then noted that a showing of relevance of the personnel records to the subject

5   matter of the litigation sufficed to require the Court to weigh the privacy interests against the litigant's

6   compelling need to obtain the records.  Id. The court instructed that if the information can be obtained

7   from depositions or other nonconfidential sources, the privacy interests would prevail. Id.  On the other

8   hand, where disclosure is warranted, the Court still must ensure that the discovery request is narrowly

9   tailored to minimize the intrusion. Id. at 652-653.

10          Though Defendants argue that information protected by a constitutional right of privacy may be

11   disclosed only where "directly relevant," the cases cited address infringement on the right of

12   association. In essence, the courts in the cases cited, determined the privacy interests were much more

13   weighty than appears here.  For example, in Boler v. Superior Court, 201 Cal.App.3d 467, 472 (1987),

14   at issue was whether the Defendant should be forced to identify his past sexual partners.  In making this

15   determination the court noted only that "relevancy in right of privacy cases seems to be governed by a

16   more stringent standard of 'direct relevance,' apparently to prevent a searching for only tangentially

17   pertinent sensitive information . . ." However, notably, the court went on, "**We need not resolve** the

18   question whether Boler's prior sexual conduct is discoverable as relevant to his alleged conduct toward

19   the plaintiff." Id., emphasis added.  Likewise, in Morales v. Superior Court, 99 Cal.App.3d 283, 289

20   (1979), the court was concerned with the same privacy right.  The Morales court relied upon Britt  v.

21   Superior Court, 20 Cal.3d 844, 852 (1978).

22          In Britt, the discovery requests at issue "attempted to investigate plaintiffs' local political

23   activities in connection" with the defendant's operation of the city's airport including, for example,

24   requiring disclosure not only of the plaintiff's own political activities aimed toward protesting the

25   operation of the airport but also the disclosure of the names of anyone who attended these meetings and

26   a report of what everyone said.  Britt, 20 Cal.3d at 849-50.  It was keenly important to the Court that it

27   was a government agency seeking disclosure of this information. The Court noted, "First Amendment

28   freedoms, such as the right of association, 'are protected not only against heavy-handed frontal attack,

8

but also from being stifled by more subtle governmental interference.'" Id. at 852.  The Court found

that those involved in political activities are "presumptively immune" from disclosure of information

related thereto and that to force disclosure of the information,

> the government's burden is a particularly heavy one: "[T]o justify any impairment there
> must be present [a] 'compelling state interest ... [which] justifies the substantial
> infringement of ... First Amendment rights. It is basic that no showing merely of a
> rational relationship to some colorable state interest would suffice; in this highly
> sensitive constitutional area "[o]nly the gravest abuses, endangering paramount
> interests, give occasion for permissible limitation," [citation]."

Id. at 855.  Thus, the complete citation makes clear that this "particularly heavy" standard does not

apply, necessarily, to the less weighty invasions of privacy such as here and does not, necessarily, apply

to private litigants.

In any event, here, the Court finds the records are directly relevant to the litigation and the

Court has been directed to no alternative method for Plaintiff to test the motivation of Defendants when

they fired him.  Likewise, there is a compelling state interest in ensuring that complainants do not

suffer retaliation after engaging in a protected activity.  Moreover, the Court has issued a protective

order which furthers the protection of the privacy interests at stake.  (Doc. 27)  As grounds for the

protective order the stipulation noted, "Defendants further anticipate that they may need to produce

information concerning Plaintiff as well as current and former employees of Defendants that is personal

in nature or protected by the right of privacy;" Id. at 2.  Thus, the Court is confident the information is

adequately protected and, therefore, the Court **OVERRULES** this objection.

**C.**     **The time period addressed by the interrogatories is not overly broad**[3]

Defendants argue that the "relevant time period" imposed by the discovery request is overly

broad.  They conclude that no records before Medrano made her complaint are relevant but do not

explain why. If Defendants employed a practice of retaliating against those who complained, at the time

Medrano made her complaint, it is difficult to conceive why information about this practice that existed

for a reasonable time before this date is not relevant.  Notably, whether the evidence is too remote is a

---

[3] Defendants argue that because the interrogatories seek information about complaints made to two members of the HR staff because, they are overbroad.  In so arguing, however, Defendants fail to explain this conclusion.  Notably, the mere fact that the two are situated in the HR department does not implicate every complaint made to that department but only those made "to or about" them.

consideration for an analysis under Fed. R. Evid. 404(b), but generally this is of greater import to the analysis under 403; the more remote the evidence, the less probative it is.   The court does not find that events that occurred about four years before Medrano complained about sexual harassment are so remote as to lack all significant probative value. Thus, the Court **OVERRULES** this objection.

**D.     Though finding that the evidence weighs in favor of disclosure, the Court is obligated to narrow the discovery request to minimize the intrusion on the privacy interest**

As noted above, even though the Court finds that the privacy interests do not preclude the disclosure of the information, the Court is obligated to minimize the intrusion. Life Technologies Corp., 197 Cal.App.4th at 652-653.

The Court notes that only those complainants who suffered an adverse employment action after making the complaint are likely to provide relevant evidence.  In support of disclosure of all complaints regardless of whether adverse actions were taken later, Plaintiff argues only that he could contact these individuals to determine whether they were discouraged from making a complaint.  However, Plaintiff does not claim that he was ever discouraged from complaining about Medrano's situation.  He protests only the treatment he received once he complained.  Therefore, whether others were discouraged from making a complaint—though ultimately *did* make a complaint but suffered no retaliation for doing so—provides evidence that has little probative value to the issues at hand.

On the other hand, complainants who suffered adverse employment actions within a reasonable time after making their complaints provide evidence that is pertinent to Defendant's motivation for firing Plaintiff. Thus, the Court will limit the scope of Defendants' responses to only that information.

**ORDER**

Based upon the foregoing, the Court **ORDERS:**

1.     Plaintiff's motion to compel discovery is **GRANTED in PART**;

2.     Within 21 days, Defendants **SHALL** "Identify" as that term is defined in the interrogatories at issue, all individuals who have made a complaint about illegal discrimination, (including sexual harassment) from January 1, 2006 through the date of the response, to or about John Sommer, Bill Murray, Wes Thornell and Javier Pimental *provided that* within 12 months after the complaint, the complainant suffered an adverse employment action including such action as

10

termination, demotion, reduction in pay, discipline or job transfer.  As to these actions, Defendants **SHALL** provide the date(s) of such action for each complainant.

IT IS SO ORDERED.

Dated:   **April 8, 2014**                    **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE