UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GOOLD,<br><br>    Plaintiff,<br><br>    v.<br><br>HILTON WORLDWIDE, et al.,<br><br>    Defendants. | Case No.: 1:13-cv-00438 - JLT<br><br>ORDER GRANTING/DENYING PLAINTIFF'S MOTIONS IN LIMINE<br>(Docs. 50, 58)<br><br>ORDER GRANTING/DENYING DEFENDANTS' MOTIONS IN LIMINE<br>(Docs. 51-57) |

Plaintiff alleges Defendants fired him in retaliation for complaining about sexual harassment suffered by another employee and complaining that the other employee's firing was unlawful.

Before the Court are the motions in limine filed by Plaintiff, John Goold, and Defendants, Hilton Worldwide, Inc. and Doubletree DTW, LLC on August 25, 2014. (Docs. 50-58). The Court held a hearing on the motions on July 30, 2014, at which the Court heard the arguments of counsel.

**A.  Legal Standards**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury."  Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir.

1

2003) (citations omitted).  Likewise, the Seventh Circuit found motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored.  See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).  A court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  Therefore, the Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine.  Sperberg, 519 F.2d at 712.

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury.  See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).

**B.    Motions in Limine**

   **I.    The EDD Hearing**

      **a.    Plaintiff's motion**

Plaintiff seeks an order excluding results of the EDD hearing, any findings made by that agency and any argument related to the EDD decision. (Doc. 50)  Defendants do not oppose this motion and "state their nonopposition to the extent it only seeks to prohibit Defendants from introducing '[a] finding of fact or law, judgment, conclusion, or final order made by a hearing officer, administrative law judge, or any person with the authority to make findings of fact or law in any action or proceeding before the appeals board.'"  (Doc. 66)  Thus, the motion in limine is **GRANTED**.  No findings, conclusions, judgments or final orders made related to the EDD determination will be admitted.

      **b.    Defendants' motion in limine #5**

Defendants move the Court for an order prohibiting Plaintiff from introducing evidence of statements made by their employees during the EDD process as evidence to support his defamation claim. (Doc. 55)  Plaintiff does not oppose this motion and states, "Plaintiff is not pursuing a self-compelled defamation claim."  (Doc. 67 at 1)  At the hearing, Plaintiff clarified that the defamation

claim is based only upon the statements made to Defendants' employees to each other. Therefore, the motion is **GRANTED**. No evidence of statements made related to the EDD proceeding will be admitted as evidence of defamation.

## II. Evidence not produced during discovery

Both parties seek an order precluding the use of evidence, including witnesses, at trial that were not identified in discovery.

Federal Rules of Civil Procedure 26(e) requires a party who has responded to an interrogatory or who has made a disclosure under Rule 26(a) to supplement its response in a timely manner if the party learns that its response is incomplete and if the additional information has not otherwise been made known to the other party during the discovery process. A party is prohibited from using at trial information or witnesses not disclosed during the discovery period unless the failure to supplement was substantially justified or harmless. Fed.R.Civ.P. 37(c)(1); R & R Sails, Inc. v. Ins. Co. of the State of Pennsylvania, 673 F.3d 1240, 1246 (9th Cir.2012) (the party facing the preclusion of evidence under Rule 37 "bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless").

To determine whether the introduction of evidence should be precluded pursuant to Rule 37, the Court considers: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F.Supp.2d 719, 733 (N.D.Cal.2011) (quoting Dey. L.P. v. Ivax Pharms., Inc., 233 F.R.D. 567, 571 (C.D.Cal.2005)).

### a. Plaintiff's motion

Plaintiff seeks an order precluding Defendant from using documents produced after the close of discovery. Specifically, Plaintiff refers to documents produced on July 23, 2014 and August 7, 2014 which include e-mails drafted by Plaintiff and sent to "agents of defendants" and "meeting minutes." (Doc. 58 at 1) However, at the hearing, Plaintiff clarified that he objects to the introduction of all of the documents contained in these productions. Plaintiff contends he has suffered prejudice by the late disclosure, and at the hearing clarified that he was not able to examine Pimental at his

deposition on these issues.

Defendants admit that documents were produced after the discovery deadline but explain that they were discovered only after the deposition of Murray—which occurred after the discovery cut-off—at which counsel realized that additional documents may exist.  (Doc. 69 at 3-4)  Defendants conducted an additional search and located "a few documents [that] had not been seen previously."  Id. at 4.  Some documents were produced on May 8, 2014, and others on May 22, 2014.  Id. at 10.  On July 23, 2014, Defendants produced a training schedule, staff meeting minutes, e-mail correspondence and video footage reviewed during the investigation into whether Medrano was taking breaks that exceeded the allowed time.  Id.  On August 7, 2014, Defendants produced additional discovered documents including an e-mail chain between Plaintiff and HR Regional Director, John Sommer.  Id. at 11.

Defendants contend the training schedule included information verifying that Plaintiff was scheduled to attend training related to "wage and hour compliance."  (Doc. 69 at 6)  The actual document indicates that the training is "HRD/GM/Finance Training."  Id. at 111.  The Court understands this translates to "Human Resource Director/General Manager/Finance Training."  This conclusion is supported by the fact that the attendees from the Bakersfield hotel included Bill Murray, the hotel's General Manager, Michael Howard, the hotel's Human Resource Director and Plaintiff, the hotel's Director of Finance.  Id.  Moreover, it appears that the training may have related to meal breaks given the notation regarding whether the hotel at which each attendee work had a time clock which "restrict[s] 30 min."  Id.

The meeting minutes produced documented discussions at various meetings related to the hotel's break policies (Id. at 113-114, 115, 116, 117-118, 119-120, 121-122, 123-124, 125-126, 128-129, 130-131) and a couple documents indicate Plaintiff facilitated discussions on the 10-minute break policy.  Id. at 6, 119, 121.

The e-mail correspondence produced on July 23, 2014, was initiated by Plaintiff and related to the period of time Plaintiff was off work in the days before he was terminated.  (Doc. 69 at 7-8, 133-136)  In the correspondence, Plaintiff reports "staying home sick," "not feeling well" and having had a "migraine headache."  Id.

The other e-mail correspondence, produced on August 7, 2014, was initiated by Plaintiff and directed to Sommer related to the 2010 suspension of Dora Medrano. Id. at 7. In this exchange, Plaintiff provides a copy of the hotel's break policy and notes that there are errors and ambiguities in it. (Doc. 69 at 141-142) Sommer responds and tells Plaintiff that he was relying upon the old policy and that a new one had been issued and Medrano had signed acknowledgement of the new policy and verbalized her understanding of the policy's requirements. Id. at 141. The then-current policy was not attached to Defendants' production. In response, Plaintiff notes that it was difficult to keep up with the changing policies given other things happening in the hotel. Id. at 140. Plaintiff iterates his confidence in Medrano and stated his commitment to ensuring that the break policy is complied with in the future. Id.

The video footage at issue was that reviewed during the investigation in 2010 of whether Medrano was taking longer than 10 minutes for her rest breaks. (Doc. 69 at 8) Defendants contend there was extensive testimony related to these video clips and that they had produced documents during discovery which summarized the footage. Id.

Here, the Court cannot find that Plaintiff is surprised by any of this evidence. For example, it is within his knowledge whether Plaintiff was scheduled to attend—and whether he actually attended—a training session related to employee breaks. Likewise, he cannot claim surprise by e-mails he drafted and received and cannot contend he was unaware of the investigation or the content of the investigation related to Medrano's 2010 discipline for taking longer breaks than authorized. Indeed, some of this evidence actually may be helpful to Plaintiff.[1]

Likewise, the Court does not find that allowing this evidence would disrupt trial but does have concerns about the importance of the content of the 2010 investigation. There is no indication that Plaintiff had seen the documents related to Medrano's 2010 discipline and there is no evidence that

---

[1] On the other hand, the Court *does find* that introduction of the video footage (Doc. 69-138) and the notes (Doc. 69 at 163, 164, 166) taken during the investigation into Medrano's rest breaks in 2010 would raise a collateral issue and would divert the jury's attention from Plaintiff's claims. Because the accuracy of the amount of time Ms. Medrano spent on her rest breaks studied during the 2010 investigation is not in question, this evidence will not be introduced. According to F.R.E. 403, the Court finds as the danger of misleading the jury and considerations of waste of time outweigh the evidence's slight probative value. However, the parties *will be permitted* to introduce evidence that Plaintiff was with Ms. Medrano during some of the problematic 2010 rest breaks. Counsel SHALL meet and confer to attempt to agree upon how this evidence will be introduced, if it will be.

5

when he complained about Medrano's termination that he did not have a reasonable belief that his employer had unlawfully terminated for making her sexual harassment complaint in 2009. Thus, just as it is irrelevant whether Medrano actually suffered sexual harassment, it is equally irrelevant whether she violated the rest break policy in 2010; Plaintiff only need have a good faith belief that he was complaining about unlawful employment practices. On the other hand, to the extent Plaintiff will rely upon the 2010 discipline of Medrano as 404(b) evidence of Defendants' retaliatory motive or to the extent that either party wishes to introduce evidence that Plaintiff took some of the 2010 breaks at issue with Medrano, counsel are referred to footnote 1 above.

Therefore, except as noted in footnote 1, the evidence related to the 2010 investigation of Medrano will be excluded (Docs. 69 at 138, 163-164, 166) and so, as to this, the motion is **GRANTED IN PART**. As to the remainder of the evidence, the motion is **DENIED**.

### a. Defendants' motion # 2

Defendant seeks an order precluding Plaintiff from presenting any witness or any documentary evidence at trial that was not disclosed in the disclosures required by Fed. R. Civ. P. 26(a)(1)(A) or during discovery. (Doc. 52) Defendants do not indicate that they are aware of any particular document or any witnesses whom they believe that Plaintiff will intend to call despite the failure to identify this evidence during discovery. Thus, it appears that Defendants filed this motion proactively to ensure this issue does not arise.

Plaintiff opposes the motion and argues that, without further clarification of what evidence is at issue, no ruling may be made at this time. The Court agrees and orders the motion **DENIED WITHOUT PREJUDICE**. Defendants must object at the appropriate time when they believe such evidence is sought to be introduced improperly.

### III. Evidence of complaints made by others (Defendant's motion # 1)

Defendants seek an order precluding Plaintiff from introducing evidence of complaints made by three other employees, none of whom worked at the same hotel as Plaintiff. (Doc. 51) However, each of the employees complained to John Sommer about unlawful employment practices and each were terminated and/or disciplined after doing so. (Doc. 62-1 at 5-6) Defendants identify three complaints revealed during discovery which they contend should not be admitted (Id. at 3-4):

6

a.    Diane Clayton was an employee in Mission Valley, California at a Doubletree Hotel. (Doc. 51 at 3)  Ms. Clayton complained on May 22, 2013 about race discrimination and a hostile work environment.  Id.  On the same date, she was terminated.  Id. at 4.

b.    Gino Majalca filed a complaint on August 27, 2012 of harassment based upon his sexual orientation.  Id. at 3-4.  At the time, he worked at the Embassy Suites in Portland, Oregon.  Id.  On February 8, 2013, Majalca was terminated in connection with a reduction in the size of the workforce.

c.    Mark Erickson complained about disability discrimination on January 2, 2013 while working at the Portland Hilton & Executive Tower hotel where he worked in Portland, Oregon.  Id. at 4.  On September 5, 2013, Erickson was disciplined, with a written warning, for tardiness and for lying on his time card.  Id.

Plaintiff opposes this motion and argues this evidence goes to the element of Defendants' motive.  (Doc. 62 at 1-2)  Notably, Plaintiff may rely upon a comparison with other similarly situated people or by demonstrating the other circumstances of the case that provide an inference that retaliation was the motive. Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). Whether "me too" evidence can be admitted at trial is a case-by-case determination that "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388 (2008).

In general, evidence of other acts or wrongs may be admitted to demonstrate motive.  F. R. E. 404(b).  Indeed, courts admit this type of evidence frequently, upon the proper showing.  For example, in Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1286 (11th Cir. 2008)—which was a case involving claims of racial discrimination and retaliation—the court held, "The 'me too' evidence was admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate." Likewise, the court held the information was admissible to determine "whether the antidiscrimination and antiretaliation policies of Bagby Elevator were effective." Id., at 1287.   This holding was issued despite that the adverse employment action occurred in circumstances that were very different from that of the plaintiff.  The court permitted the evidence under 404(b) to demonstrate the unlawful intent of a common decision maker, even though the common decision maker was only one of several.  Id. at 1286.  The court held similarly in Demers v. Adams Homes of Northwest Florida, Inc., 321 F. App'x 847, 853-854 (11th Cir. 2009), when other women, who suffered similarly, were permitted to testify as to the unlawful intent.

In <u>Buckley v. Mukasey</u>, 538 F.3d 306, 319 (4th Cir. 2008), the court determined that evidence of retaliatory motive is relevant under Fed. R. Evid. 401 and is admissible under 404(b). Likewise, in <u>Griffin v. Finkbeiner</u>, 689 F.3d 584, 598-99 (6th Cir. 2012), the court found error when the district court limited the introduction of "me too" evidence only to the same decision-maker. The court observed,

> Whether the same actors are involved in each decision is a factor, but <u>Sprint</u> makes clear that it cannot be the only factor in the decision whether to admit "other acts" evidence. Notably, the testimony in <u>Sprint</u> involved supervisors "who played no role in the adverse employment decision challenged by the plaintiff." 552 U.S. at 380, 128 S.Ct. 1140. Here, the district court did not consider other ways in which the excluded evidence could be "related ... to the plaintiff's circumstances and theory of the case," id. at 388, 128 S.Ct. 1140, such as temporal and geographical proximity, whether the various decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations of retaliation.

<u>Id</u>. at 598-599. The Ninth Circuit agrees as set forth in <u>Heyne v. Carruso</u>, 69 F.3d 1475, 1481 (9th 1995). In <u>Heyne</u>, the Court reversed the trial court's decision to preclude this type of evidence. <u>Id.</u> The Court determined that evidence from other employees who suffered sexual harassment by the defendant was probative of the defendant's motive for firing her. <u>Id</u>.

Here, the complaints documented by Defendants all occurred after Plaintiff's firing. However, this does not make the evidence inadmissible. In <u>Ansell v. Green Acres Contracting Co.</u>, 347 F.3d 515, 524-25 (3d Cir. 2003), the court considered the value of this type of evidence.

> Subsequent actions by an employer against co-workers may be less probative of an employer's intent than prior actions "because the logical relationship between the circumstances ... and the employer's decision to terminate is attenuated." <u>Coletti</u>, 165 F.3d at 777. That is not to say, however, that subsequent acts can have no probative value; they may still be relevant to intent. <u>Echeverri</u>, 854 F.2d at 645; cf. <u>Ryder v. Westinghouse Elec. Corp.</u>, 128 F.3d 128, 132–33 (3d Cir.1997) (age-discriminatory comments made by CEO and other supervisors one year after plaintiff's termination were relevant to show managerial attitudes). A court should consider the passage of time between the other act and the act alleged to be discriminatory. There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent.

As Defendants make clear, they will counter the prima facie case with evidence that Plaintiff's firing occurred due to a legitimate, non-discriminatory reason. In response, Plaintiff is entitled to offer

evidence of pretext.  Pretext *may* include evidence of others who suffered retaliation after making complaints of unlawful employment actions.

Though each of these other complaints occurred after Plaintiff's firing, they did not happen so far after as to negate their probative value related to motive.  Only Ms. Clayton's complaint occurred more than a year after Plaintiff's firing and this was only by about three weeks.  Though the Court cannot discount the prejudicial impact of this evidence, because intent is usually not amenable to direct proof, the significant probative value of this evidence substantially outweighs the danger of unfair prejudice.  Thus, the Court does not find that the evidence should be excluded under Fed. R. Evid. 403. Therefore, the motion is **DENIED WITHOUT PREJUDICE**.  However, none of these individuals will be permitted to testify and questioning about this topic with Mr. Sommer will not occur unless there is a stipulation by the parties or the Court has conducted a hearing pursuant to Federal Rules of Evidence 104(c).

**IV.     Details related to Dora Medrano's sexual harassment claim (Defendant's Motion # 3)**

Defendants' move to exclude testimony related to the details surrounding Dora Medrano's complaint related to sexual harassment. (Doc. 53)  They argue that the "who, what, when and where" details related to her complaint and any subsequent investigation do not bear on whether Plaintiff suffered retaliation. Id. at 4.  Defendants argue that the protected activity at issue is his complaint about the unlawfulness of her termination, not the particulars of her earlier complaint. Id.  Defendants argue that Plaintiff never raised the issue of Medrano's sexual harassment complaint when he complained about her firing. Id. However, the portions of Plaintiff's deposition transcript included with the motion indicate that he did raise the issue of Medrano's sexual harassment complaint.  Plaintiff testified,

> "And I said, "You know"—I had – Ms. Medrano had contacted me.  She had left something at the office.  I said, "You know, she did mention something; that ever since she did the harassment thing—harassment allegation a couple of years ago, here we go again with an (800) phone call and she gets singled out again." That's where her problem started.
> And I said, "You know, Bill" – I told Bill.  I said, "I think she has got a good case against the hotel.  And if she does, whether it's the rest period thing or even the sexual harassment, I'll back up her story.  I'm not going to lie for the hotel."

(Doc. 53 at 15)  When asked whether he raised the sexual harassment complaint to Javier Pimental, Plaintiff clarified,

> No. That was with Bill Murray.  Javier wasn't there during [the] original harassment; so I didn't talk to him about that.  I just brought up the fact that I thought she had a good case on the ten-minute rest period termination.  It was with Bill Murray.

Id. at 18.  Upon further questioning, again Plaintiff reiterated that he reported to Bill Murray that he believed Medrano's firing related, at least in part, to her sexual harassment complaint.  Id. at 19, 20.  In any event, Defendants argue that the details related to the sexual harassment complaint, whether there was an investigation and the results thereof is "highly prejudicial" to them.  Id. at 5.

Plaintiff opposes the motion and argues that the fact that Medrano made the complaint, the fact that Michael Howard was the alleged harasser and the facts surrounding the inadequacy of the investigation or the lack of an investigation should be admitted.  (Doc. 64 at 1-2)  First, Plaintiff argues that the details of the sexual harassment complaint must be admitted because this is the essence of Plaintiff's complaint—that he was terminated for complaining that Medrano suffered sexual harassment.  Id.  However, whether Medrano actually suffered sexual harassment is not pertinent to Plaintiff's complaint.  Instead, Plaintiff needs to show only that he had a reasonable belief that Defendants took an unlawful employment action.  E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1013 (9th Cir. 1983.  The employee has engaged in a protected activity in making his complaint about the unlawful employment action even if it turns out he was mistaken as to the facts.  Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978).  Thus, the details of Ms. Medrano's 2009 sexual harassment complaint, for the most part, are not pertinent to Plaintiff's claim that he was fired in retaliation for engaging in the protected activity.

Second, Plaintiff argues that evidence Murray failed to pass on for investigation Medrano's complaint related to sexual harassment, when coupled with the fact that Howard was permitted to conduct the investigation into the 2010 rest break issue, this demonstrates Murray's motive to retaliate against her for making the complaint.  (Doc. 64 at 2)  Alternatively, Plaintiff argues that because Murray testified that he *did* pass on the information for investigation to Sommer, Sommer's failure to investigate the complaint is evidence of his motive to retaliate.  Id. at 3.  Either way, Plaintiff argues,

1  the evidence is admissible under Fed. R. Evid. 404(b).  Id.

2  　　　　Third, Plaintiff argues that in 2010, he confronted Sommer about his concern that the
3  investigation of Medrano related to the rest breaks was related to her sexual harassment complaint.
4  (Doc. 64 at 3-4)  Sommer became angry at Plaintiff for failing to report the sexual harassment
5  complaint earlier—implying Sommer was unaware of the complaint—and, as a result, Murray
6  prepared a memo which, arguably, disciplines Plaintiff for failing to timely report Medrano's sexual
7  harassment complaint.

8  　　　　The Court agrees that the specifics of the sexual harassment complaint lodged by Medrano are
9  not pertinent to resolution of this case.  However, the evidence that she made a sexual harassment
10 complaint, when she made the complaint, who she alleged was the harasser and whether the complaint
11 was investigated, is pertinent.  Indeed, Plaintiff has indicated that the reason that he took his breaks
12 with Medrano was to protect her from further harassment and that it was the alleged harasser, Howard,
13 who was allowed to conduct the investigation into her violating the 10-minute-break rule.

14 　　　　Notably, Plaintiff attempted to intervene in the imposition of that discipline and, in doing so,
15 confronted Sommer with his belief that Medrano's discipline was related to her sexual harassment
16 claim.  In response, Murray prepared a memo which disciplines Plaintiff for failing to follow up on
17 Medrano's complaint.

18 　　　　Coupled with the fact that Plaintiff was terminated, ultimately, after again attempting to
19 intervene in the discipline imposed on Medrano, in part, by informing the general manager that he
20 would support Medrano in litigation—and specifically mentioning that the harassment complaint was
21 one reason for her firing—this evidence is significantly probative.  The court finds that this evidence
22 bears directly on Plaintiff's claim of retaliation or indirectly on the claim as evidence of Defendants'
23 motive.  Therefore, the motion is **GRANTED IN PART** in that Plaintiff will not be permitted to
24 introduce evidence as to the details of the sexual harassment complaint.  However, the motion is
25 **DENIED IN PART** in that Plaintiff is permitted to introduce the following evidence: that the
26 complaint was made; the date the complaint was made; that Michael Howard was identified as the
27 harasser; that Plaintiff reported the complaint to Murray; that Murray did or did not report the
28 complaint to Sommer; Sommer's reaction when Plaintiff confronted him about whether Medrano's

11

2010 discipline was retaliation for her sexual harassment complaint; evidence regarding whether an investigation occurred; and, the March 2010 memo which seeks to discipline Plaintiff for failing to follow up on inappropriate behavior suffered by employees.

## V. Meal break violations and whether other supervisors "signed off" on time sheets

### A. Meal break violations (Defendants' motion # 4)

Defendants move to exclude any evidence related to whether employees exceeded the period allowed by Defendants' policies for meal breaks and whether supervisors were disciplined for failing to ensure compliance with this time limit. (Doc. 54) Defendants argue that meal breaks are unpaid breaks while rest breaks occur on-the-clock. Id. In this way, they argue that the failure of a supervisor to enforce the time limits for a meal break did not carry the same consequences. Id.

In making this argument, Defendants ignore that a supervisor who permits an employee to take a longer than allotted meal break but records the break as one that did not exceed the time limit, in essence, this still deprives the employer of work for which the employee has been paid. To this extent, it is of no consequence whether the error in recording an employee's break was for a meal or a rest. Likewise, there was evidence presented earlier in this case that part of the reason for Plaintiff's termination was because he failed to ensure his employees arrived at work on time. Like meal breaks, an employee who arrives late at work does not earn pay for time not worked. Thus, defendants fail to explain the apparent disparity in their positions that this could be a basis for discipline but allowing employees to take long meal breaks cannot.

Plaintiff opposes this motion and notes that in discovery, Defendants took the position that he was terminated for failing to ensure compliance with both the rest and meal breaks. (Doc. 65 at 1-2) In particular he notes that Mr. Pimental believed that Plaintiff's failure to ensure Medrano took only 30-minute meal breaks was a basis for his termination. Id. at 2.

Because Plaintiff was fired in part for failing to ensure Medrano failed to take only 30-minute meal breaks and because he allowed her and others to arrive to work late, he is entitled to demonstrate that other supervisors who did not engage in protected activity were treated more favorably. Therefore, the motion is **DENIED**.

### B. Other supervisors' actions related to the time cards (Defendants' motion # 7)

Defendants seek an order precluding the introduction of evidence that other managers did or did not "sign off" on time sheets. (Doc. 57) Defendants argue that Plaintiff was fired because he "knowingly approv[ed] false reports regarding the length of Medrano's breaks." Id. at 4. In particular, Defendants argue that evidence from Eric Kuhn should not be permitted because what he did related to the time sheets for his subordinates does not bear on what Plaintiff did. Id at 3-4.

Plaintiff opposes the motion and argues that evidence about what other supervisors understood about their signing the time sheets and how this was accomplished is probative of whether signing the time sheets with inaccurate information was, in fact, a falsification. (Doc. 70)

It appears, to some extent, counsel are talking at cross purposes. The Court agrees that if a particular manager is not required to "sign off" on time sheets, this fact is not pertinent to the issues at hand. For example, Mr. Murray testified that "no paperwork . . . was filled out by anyone relating to rest breaks taken by the individual who served as [his] secretary." (Doc. 41-8 at 4) Moreover, Murray testified that he was not obligated to verify that his secretary took rest or meal breaks. Id. at 4-5. However, Murray testified that he would not be able to verify that his secretary took rest breaks given his other obligations, though generally he could verify she took her meal breaks. Id. at 5-6. He admitted that he could not always verify breaks because he was off-property occasionally. Id.

Notably, Kuhn's declaration—filed in support of Plaintiff's opposition to the motion for summary judgment—indicated that he, in fact, *did* sign the time sheets on which his subordinates noted their hours and break times. (Doc. 39-2 at 5-6) Kuhn declared that signing the time sheets was to verify that breaks were taken and that it was not to verify the actual amount of minutes the employees took for breaks. Id. at 6. Mr. Kuhn attested that there was no way he could have done this because his crews of employees worked different shifts and he could not verify the breaks for the employees on the shifts he did not work. Id. Time sheets attached to Plaintiff's opposition demonstrate this. (Docs. 70-2, 70-3)

Because Defendants will assert that Plaintiff was fired for a legitimate business reason—falsifying time sheets—they will be required to demonstrate that signing the time sheets, in fact, equates to a verification that the employees took their breaks at the times reflected on the sheets. Plaintiff is entitled to counter this evidence with evidence—such as testimony from Kuhn and

Murray—that it was not always possible to verify the actual minutes taken by employees for their breaks by their supervisors. On the other hand, no mention will be made that some supervisors, like Murray, were not required to complete time sheets for their direct reports. Thus, the motion is **GRANTED in PART** and **DENIED in PART.**

### VI.   Medrano's perceived basis for her termination (Defendants' motion # 6)

Defendants move to exclude any evidence related to Medrano's perceived basis for her termination. (Doc. 56) Defendants argue that whether Medrano believes her termination stemmed from her 2009 sexual harassment complaint is irrelevant to Plaintiff's claims. Id. at 3. Plaintiff indicates he has no intention of eliciting this evidence. (Doc. 68)

The court notes that Plaintiff testified that Medrano told him that she believed everything wrong at work started with her sexual harassment complaint. (Doc. 56 at 15) Plaintiff told Mr. Murray that Medrano said this and that he believed that Plaintiff had "a good case against the hotel" and that, if she sued, he'd "back up her story." Id. However, as noted above, Plaintiff must have had a good faith belief that Defendants engaged in unlawful employment practices when he complained about the treatment of Ms. Medrano. Thus, it is important what *he* thought related to the treatment of Medrano; it is not pertinent what Ms. Medrano thought. Therefore, the motion is **GRANTED**.

### ORDER

For the reasons set forth above, the Court **ORDERS**:

1. Plaintiff's motion in limine (Doc 50) is **GRANTED**;
2. Plaintiff's motion in limine (Doc 58) is **GRANTED IN PART** and **DENIED IN PART**;
3. Defendant's motion in limine #1 (Doc. 51) is **DENIED WITHOUT PREJUDICE**;
4. Defendant's motion in limine #2 (Doc. 52) is **GRANTED**;
5. Defendant's motion in limine #3 (Doc. 53) is **GRANTED IN PART** and **DENIED IN PART**;
6. Defendant's motion in limine #4 (Doc. 54) is **DENIED**;
7. Defendant's motion in limine #5 (Doc. 55) is **GRANTED**;
8. Defendant's motion in limine #6 (Doc. 56) is **GRANTED**;

9. Defendant's motion in limine #7 (Doc. 57) is **GRANTED IN PART** and **DENIED IN PART**.

Counsel **SHALL** comply with this order and **SHALL NOT** make reference to the excluded evidence and **SHALL** discuss this order with their witnesses so that witnesses do not refer to excluded evidence.

IT IS SO ORDERED.

Dated:   **September 15, 2014**          **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE